O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARGARET G. ESPARZA,              )   Case No. EDCV 10-0929-DTB
                                  )
                Plaintiff,        )
                                  )
        vs.                       )   ORDER AFFIRMING DECISION OF
                                  )   COMMISSIONER
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
                Defendant.        )
                                  )

Plaintiff filed a Complaint on June 21, 2010, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act. In accordance with the Magistrate Judge's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on February 14, 2011. Thus, this matter now is ready for decision.[1]

/ / /

/ / /

---

[1]     As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

**DISPUTED ISSUES**

1.      Whether the Administrative Law Judge ("ALJ") has properly considered all of the relevant medical evidence of record including opinions from treating physicians.  (Jt. Stip. 4.)

2.      Whether the ALJ has properly considered plaintiff's subjective complaints and properly assessed plaintiff's credibility.  (Jt. Stip. 9.)

3.      Whether the ALJ has properly developed and considered the vocational evidence and issues in this case.  (Jt. Stip. 17.)

**DISCUSSION**

**I.      The ALJ properly considered the medical evidence of record.**

Plaintiff asserts that the ALJ failed to properly consider "all of the relevant medical evidence in this case." (Jt. Stip. 5.)  Specifically, plaintiff asserts that the ALJ failed to consider the opinion of Tushar Doshi, M.D., that plaintiff was permanently disabled, and therefore, was precluded from returning to her prior position. (Jt. Stip. 4-5.)  Plaintiff also asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Doshi that plaintiff is precluded from prolonged weight bearing activities.  (Id.)

In evaluating medical opinions, the Ninth Circuit distinguishes amonst three types of physicians: (1) Treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine or treat).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  Id.  Although a treating physician's opinion is entitled to special weight, McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989), "[t]he treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of

2

1   disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight

2   given to a treating physician's opinion depends on whether it is supported by

3   sufficient medical data and is consistent with other evidence in the record.  See 20

4   C.F.R. §§ 404.1527 (d)(2) and 416.927(d)(2).   When a treating or examining

5   physician's opinion is not contradicted by another physician, it may only be rejected

6   for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  Where contradicted, a

7   treating or examining physician's opinion may not be rejected without "specific and

8   legitimate reasons" supported by substantial evidence in the record. Id. at 830-31; see

9   also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

11      A.   Dr. Doshi

12      Dr. Doshi completed a "Permanent and Stationary Orthopaedic Evaluation" of

13   plaintiff on January 23, 2007, while treating plaintiff with respect to her worker's

14   compensation case.  (AR 330-41.)  The evaluation included plaintiff's self-reported

15   history of her injury and medical history and Dr. Doshi's examination findings.

16   However, Dr. Doshi acknowledged that "the medical opinions given in this report

17   were arrived at without knowledge of [plaintiff's] previous medical records."  (AR

18   330, 339.)

19      The Court concurs with defendant that the ALJ reasonably considered Dr.

20   Doshi's opinion.  (Jt. Stip. 6-7.)  The ALJ expressly considered Dr. Doshi's opinion

21   and noted, for example, the doctor's conclusion that plaintiff was permanent and

22   stationary,[2] plaintiff exhibited some loss of motion, plaintiff's reflexes were intact and

23   sensation was normal.  (AR 14, 335-373, 339.)  Plaintiff contends that the ALJ "failed

25      [2]   A disability is considered "permanent and stationary" for California

26   workers' compensation purposes "after the employee has reached maximum medical

27   improvement or his or her condition has been stationary for a reasonable period of

28   time."  Gangwish v. Workers' Compensation Appeals Bd., 89 Cal. App. 4th 1284,
    1290 n. 7, 108 Cal. Rptr. 2d 1 (Cal. App. 2d. Dist. 2001) (quoting Cal. Code Regs.,
    tit. 8, § 10152).

to comment" on the portion of Dr. Doshi's opinion which stated: "At this point in time, [plaintiff's] level of permanent disability precludes her from returning to her usual and customary work duties as a Bilingual Instructional Aide, since the physical demands of her job as described in the job description portion of this report, exceed her current disability." (Jt. Stip. 4-5; AR 339.)  However, the ALJ correctly noted that plaintiff's worker's compensation physicians' opinions regarding plaintiff's alleged disability "concerned matters reserved to the Commissioner for determination and were not based upon the Social Security Act and implementing regulations . . . ." (AR 13.)  Boardman v. Astrue, 286 F. App'x 397, 399 (9th Cir. 2008) ("The ALJ is correct that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion on the matter is not entitled to special significance."); see also 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Social Security Ruling ("SSR") 96-5p,[3] 1996 WL 374183, at *2.  In addition, in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence; rather, the ALJ need only discuss evidence that is significant and probative. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (holding that the ALJ "did not selectively analyze the evidence" where the ALJ referred to a combination of medical reports without specifically discussing a report of low

/ / /

_____

[3]     "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the [Social Security Administration].  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

1  probative value upon which the ALJ did not rely); Vincent v. Heckler, 739 F.2d 1393,

2  1394-95 (9th Cir. 1984) (per curiam).

3      Furthermore, plaintiff overlooks the fact that Dr. Doshi qualified his opinion

4  that plaintiff was precluded from returning to her prior work: "[I]n the event of

5  [plaintiff's] employer being willing to accommodate her at work with the

6  aforementioned work restrictions, then she may return to such modified work." (AR

7  339.)   The Court notes that the ALJ's Residual Functional Capacity ("RFC")

8  determination (*i.e.* that plaintiff had the RFC to "perform light work as defined in 20

9  C.F.R. 404.1567(b) and 416.967(b); with appropriate breaks; with occasional postural

10 activities; limited to moderately complex tasks with up to 4-5 step instructions; and

11 involving no fast-paced work such as rapid assembly" (AR 12) was largely consistent

12 with the limitations imposed by Dr. Doshi.[4]  (AR 337, 339.)

13     Thus, the ALJ properly considered Dr. Doshi's opinion.

14

15     **B.**   Prolonged weight bearing activities

16     Plaintiff contends that the ALJ "failed to properly explain and provide

17 significant and legitimate reasons for his rejection of the [p]laintiff's preclusion from

18 prolonged weight bearing [activities] . . . ."[5]  (Jt. Stip. 5.)  Plaintiff cites to the June

19 28, 2006, opinion of treating physician Hamid Rahman, M.D., and the May 3, 2007,

20

21     [4]    With regard to the appropriate work restrictions, Dr. Doshi's opinion was

22 as follows (AR 337):

23     Based on the above described clinical findings I opine that [plaintiff]

24 has: 1. Lumbosacral Spine Disability Precluding Heavy Work.  Contemplates she has

    lost approximately 50% of pre-injury capacity for performing activities such as

25 lifting, bending, stooping, pushing, pulling, and climbing or other comparable

26 physical activities.

27     [5]    Prolonged weight bearing activities can be equated to prolonged

28 standing or walking.  See Jenkins v. Astrue, 628 F.Supp.2d 1140, 1149 (C.D. Cal.

   2009).

opinion of consultative examiner Christopher H. Fleming, M.D., each of whome examined plaintiff in connection with her worker's compensation case. (Jt. Stip. 4.) The Court finds and concludes that the ALJ's rejection of these opinions was not erroneous.

Dr. Rahman began treating plaintiff on September 15, 2005, and released plaintiff as permanent and stationary on June 28, 2006. (AR 303-09, 630.) In a one-page "Statement Concerning Disability and Medical Office Attendance," Dr. Rahman opined that plaintiff was able to participate in vocational rehabilitation services and summarily concluded that plaintiff was precluded from "heavy working and prolonged [weight] bearing," without any elaboration or explanation. (AR 630.) Furthermore, none of Dr. Rahman's prior nine orthopedic evaluations mentioned a restriction from prolonged weight bearing activities. (See, e.g., AR 279-309.) The ALJ acknowledged Dr. Rahman's opinion that plaintiff was precluded from heavy work and prolonged weight bearing activities but concluded that "[t]he record does not reflect sustained clinical or laboratory pathology consistent with a preclusion from light work with standard breaks, the claimant's admitted daily activities not inconsistent with prolonged weight bearing." (AR 14.) The Ninth Circuit has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (the Commissioner may reject a treating physician's opinion that is "brief and conclusory" with "little in the way of clinical findings to support the conclusions that appellant was totally disabled."); Connett v. Barnhart, 340 F.3d 871, 874-75 (9th Cir. 2003) (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician whose restrictive functional assessment was not supported by treatment notes); Holohan, 246 F.3d at 1202 n.2 (stating that a physician's opinion may be "entitled to little if any weight" where the physician "presents no support for his or

her opinion"); 20 C.F.R. § 404.1527(d)(2) (A treating physician's opinion may be discounted if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques.").

The Court concurs with defendant that the ALJ reasonably found that Dr. Rahman's opinion regarding prolonged weight bearing activities was inconsistent with the objective findings and the record as a whole. (Jt. Stip. 7-8; AR 13-15.) Dr. Rahman was the only physician of record who opined that plaintiff was precluded from prolonged weight bearing activities.[6] The medical opinions of record, including plaintiff's treating physicians, Dr. Doshi and Quynam Nguyen, M.D., appear to have agreed that plaintiff was merely precluded from heavy lifting and repetitive postural activities. (See, e.g., 314, 337, 342-46, 378, 380-87.) The ALJ incorporated such limitations into the RFC assessment, as discussed above. Drs. Doshi and Nguyen's opinions were supported by independent clinical findings, and as such, their opinions constituted substantial evidence upon which the ALJ properly could rely to reject Dr. Rahman's opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ also noted additional evidence that did not support a limitation for prolonged weight-bearing activities, including an MRI that was negative for impingement, normal somatosensory studies, and electrodiagnostic studies that were negative for lumbar radiculopathy or neuropathy. (AR 13, 259-60, 265, 267-71.) Upon reviewing the objective medical evidence, the ALJ ultimately concluded that the "medical sources of record [were] in general agreement that [plaintiff] [was] merely precluded from heavy work . . . . In fact, the record is without reports of

/ / /

---

[6]     As will be discussed below, Dr. Fleming did not find that plaintiff was precluded from prolonged weight bearing activities, but, rather, opined that plaintiff was precluded from heavy lifting and repetitive postural movements. (See AR 670.)

1  ongoing symptoms or concomitant signs and findings consistent with greater
2  limitations than those found herein." (AR 15.)

3      The ALJ may properly reject a treating doctor's opinion by providing "specific
4  and legitimate reasons supported by substantial evidence in the record." Lester, 81
5  F.3d at 830.   Here, the ALJ has met this burden by setting forth a detailed and
6  thorough summary of the facts and conflicting clinical evidence. See Magallanes,
7  881 F.2d at 751 (noting the court may draw inferences from the ALJ's discussion of
8  the evidence in the record that reveal his rationale); see also Matney v. Sullivan, 981
9  F.2d 1016, 1019 (9th Cir. 1992) ("When there is conflicting medical evidence, the
10 Secretary must determine credibility and resolve the conflict."). This Court may not
11 substitute its own judgment for that of the ALJ as long as the ALJ's determination is
12 supported by substantial evidence. 42 U.S.C. § 405(g). In this case, the ALJ could
13 have resolved the conflict in the evidence based on the "substantial evidence" of the
14 objective medical evidence and the opinions of Drs. Doshi and Nguyen in order to
15 reject the opinion of Dr. Rahman.

16     The ALJ also properly rejected a part of Dr. Fleming's opinion.  Dr. Fleming
17 examined plaintiff on May 11, 2006, and May 3, 2007. (AR 647-73.) In the May 3,
18 2004, evaluation report, Dr. Fleming found that plaintiff was precluded from heavy
19 lifting and repetitive bending and stooping, as he likewise opined in the May 11,
20 2006, evaluation report.   (AR 658, 670.)   In addition, Dr. Fleming stated,
21 "[p]rophylactically [plaintiff] should avoid prolonged standing and walking and
22 prolonged sitting. This is based on her subjective complaints." (AR 670) Although
23 the ALJ generally adopted Dr. Fleming's opinion and incorporated his limitations into
24 the RFC assessment, the ALJ concluded that the portion of Dr. Fleming's opinion
25 concerning prolonged standing, walking and sitting "is not accorded great weight"
26 because it was prophylactic in nature and was based upon plaintiff's subjective
27 complaints.  (AR 14.)  Where a physician's opinion is "premised . . . upon the
28 claimant's own accounts of his symptoms and limitations," it may be properly

disregarded where those subjective complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (affirming the ALJ's rejection of the treating physicians' unsupported and inconsistent opinions that relied on claimant's own testimony); see also Thomas, 278 F.3d at 957 (rejecting the physician's opinion in part because it was based on claimant's subjective complaints, not on new objective findings). The ALJ considered plaintiff's subjective allegations of impairment and explained why those allegations were not credible to the extent they exceeded the objective medical findings. (AR 13-15.) As will be discussed in greater detail below, the Court affirms the ALJ's adverse credibility finding, and therefore, the ALJ did not err in rejecting Dr. Fleming's opinion for that reason.

Accordingly, based on the record before the Court, the Court finds and concludes that the ALJ's rejection of Drs. Rahman and Fleming's opinions was supported by adequate reasons under the appropriate legal standard and the record as a whole. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ did not err.

**II.    The ALJ provided clear and convincing reasons for rejecting plaintiff's testimony and the implicit rejection of lay witness testimony was harmless error.**

Plaintiff asserts that the ALJ improperly considered her subjective complaints, and the ALJ's reasons for rejecting plaintiff's testimony did not satisfy the requisite standard. (Jt. Stip. 9-10.) Plaintiff also asserts that the ALJ failed to properly consider the supporting statements made by her son. (Jt. Stip. 9.)

/ / /

/ / /

/ / /

9

A.      Plaintiff's credibility

Where the claimant has produced objective medical evidence of an impairment or impairments which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; see also Dodrill, 12 F.3d at 918. Further, a credibility finding must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas, 278 F.3d at 958. Factors that may be considered include: (1) The claimant's reputation for truthfulness; (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities; (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment; and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Thomas, 278 F.3d at 958-59.

Since the ALJ did not make an express finding of malingering, the issue before the Court is whether the ALJ provided reasons for his adverse credibility determination that satisfy the standard set forth above. The Court finds and concludes that the ALJ offered clear and convincing reasons for rejecting plaintiff's testimony.

The ALJ considered many of the above listed factors when he found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but plaintiff's statements concerning the

10

1    intensity, persistence, and limiting effects of her symptoms were not entirely credible.

2    (AR 15.)  The ALJ did not credit plaintiff's statements, in part, to the extent that they

3    were inconsistent with the objective medical evidence.  (Id.)  Contradiction with the

4    medical records is a sufficient basis for rejecting plaintiff's subjective pain testimony.

5    See Carmickle, 533 F.3d at 1161.  "Although lack of medical evidence cannot form

6    the sole basis for discounting pain testimony, it is a factor that the ALJ can consider

7    in his credibility analysis."  Burch, 400 F.3d at 681 (an ALJ may properly rely on the

8    inconsistency between claimant's subjective complaints and objective medical

9    findings); Morgan, 169 F.3d at 600 (an ALJ may properly consider the conflict

10   between claimant's testimony of subjective complaints and objective medical

11   evidence in the record).

12          The ALJ considered the medical evidence and the extent to which it supported

13   the claimed severity of plaintiff's symptoms.  (AR 13-15.)  The ALJ noted the May

14   2005 electrodiagnostic studies that were negative for lumbar radiculopathy or

15   neuropathy and the November 2005 MRI that was negative for impingement,

16   somatosensory studies were normal, electromyography was negative for left sided

17   radiculopathy, and positive L5 radiculopathy findings were associated with only a

18   two to four millimeter protrusion.  (AR 13.)  The ALJ referenced Dr. Fleming's May

19   11, 2006 evaluation of plaintiff, which included the results of his independent

20   evaluation and a review of plaintiff's medical records.  (AR 14, 647-60.)  The report

21   revealed the following: (1) Plaintiff did not appear to be in acute distress and sat

22   without difficulty for more than thirty minutes in the doctor's office; (2) plaintiff

23   walked with a normal gait and was able to walk on her toes and heels without

24   weakness; (3) there was minimal spasm and no tenderness to a light touch of her

25   lumbar spine; (4) Waddell's trunk rotation test was negative; (5) her lumbar spine had

26   a full range of motion; (6) plaintiff had negative straight leg raising tests bilaterally;

27   (7) a sensory exam of plaintiff's lower extremities was normal and a motor exam

28   showed no weakness; and (8) both of plaintiff's hips had a full range of motion

without tenderness. (AR 14, 650-51.) The ALJ also noted that, despite plaintiff's use of a cane, "the record does not indicate that an assistive device is medically required." (AR 15.) Finally, the ALJ found that the medical sources of record were in general agreement that plaintiff was merely precluded from heavy work. (Id.)

Further, the ALJ noted that plaintiff received conservative treatment that provided symptomatic relief. (AR 13; see, e.g., AR 281, 296, 319, 323, 332, 581, 627, 656-57.) In March 2006 plaintiff was only using ibuprofen and BioFreeze gel for medication, and in May 2006 she reported that physical therapy had been helpful. (AR 13.) The ALJ noted that an epidural steroid injection in May 2006 was successful. (AR 13, 617-19.) The ALJ also referenced plaintiff's initial appointment with Dr. Nguyen, plaintiff's treating physician, on August 11, 2006. (AR 13, 322-26.) Dr. Nguyen noted that plaintiff was not taking any prescription medications, and that her pain and symptoms were relieved by rest, over-the-counter medications, and heat. (AR 323.) Dr. Nguyen treated plaintiff conservatively, prescribing Soma (a muscle relaxant) and a topical gel medication for pain and inflammation. (AR 13, 324.) In fact, Dr. Nguyen authorized plaintiff to return to light duty work in November 2006 precluding only heavy lifting, as the ALJ noted. (AR 14, 313-15.) Dr. Nguyen continued plaintiff on a conservative treatment plan with the same medication regime and a home exercise and walking program. (AR 14, 314.) The ALJ concluded that the medical evidence showed that plaintiff's symptoms were "medically managed, under control, and not associated with significant medication side effects . . . [and plaintiff] reported a positive response to biofeedback and relaxation [], as well as conservative orthopedic care. . . . [Plaintiff] ambulat[ed] normally, with no instability, normal strength and sensation, and [did not] take[] [any] regular medications of a potency commensurate with her allegations." (AR 15.) Dr. Doshi, an orthopaedic surgeon who practices with Dr. Nguyen, also noted on January 23, 2007, that plaintiff had been receiving "conservative care as recommended, with expected clinical improvement." (AR 332.)

1    The ALJ inferred from plaintiff's conservative treatment, as well as from the

2  moderate improvement resulting therefrom, that plaintiff's pain was not as severe as

3  she alleged.  (AR 14-15.)  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

4  (holding that "conservative treatment is sufficient to discount a claimant's testimony

5  regarding severity of an impairment."); see also Johnson v. Shalala, 60 F.3d 1428,

6  1432 (9th Cir. 1995) (The ALJ properly relied on the fact that only conservative

7  treatment was prescribed for a back injury and it constituted a clear and convincing

8  reason for disregarding testimony that the claimant is disabled); Fair, 885 F.3d at 604

9  (an ALJ may rely on a claimant's conservative treatment regimen to reject a

10  claimant's testimony of disabling limitations or disabling pain).

11    The ALJ also noted that, despite plaintiff's initial testimony regarding her

12  inability to conduct household chores, she later testified that she did the dishes and

13  performed other household chores when she was unsatisfied with her son's cleaning.

14  (AR 15; compare AR 35-36 with AR 42.)  In addition, plaintiff testified that she did

15  not do the laundry (AR 42), but she stated in a function report that she did small loads

16  of laundry and cleaned the kitchen.  (AR 168, 170.)  Plaintiff also testified that her

17  son and husband did all of the cooking, but in a disability report plaintiff stated that

18  she also cooked.  (AR 215.)  Furthermore, there was conflicting testimony about

19  plaintiff's ability to drive.  Plaintiff initially testified that she had not driven in awhile

20  but later testified that she "sometimes" drove to the store and wrote in a function

21  report that she drove to the bank, market and post office.  (AR 30, 171.)  In addition,

22  although plaintiff testified that her husband did not drive (AR 30), plaintiff stated in

23  a function report that her husband "drive [sic] me around."  (AR 220, 224.)  An ALJ

24  may rely on inconsistencies between a plaintiff's allegations concerning the extent

25  of her incapacity and her activities of daily living.  Thomas, 278 F.3d at 958-59.

26  Here, the ALJ could reasonably infer that plaintiff could not perform these activities

27  if she had the extent of incapacity she claimed.  See Fair, 885 F.2d at 604 (the ability

28  to attend to personal needs, household chores, household duties, and transportation

13

1  was considered, *inter alia*, to be sufficient to reject allegations of disabling pain); see
2  also Thomas, 278 F.3d at 959.

3      The ALJ provided specific, clear, and convincing reasons for declining to
4  credit plaintiff's testimony, and his credibility finding is supported by substantial
5  evidence.  See Fair, 885 F.2d at 604 ("Where, as here, the ALJ has made specific
6  findings justifying a decision to disbelieve an allegation of excess pain, and those
7  findings are supported by substantial evidence in the record, our role is not to second-
8  guess that decision.").  Accordingly, the Court finds and concludes that the ALJ
9  rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit
10  plaintiff's testimony.

11

12      B.   Lay witness testimony

13      To the extent that plaintiff contends that the ALJ failed to consider plaintiff's
14  son, Gabriel G. Esparza's, any error was harmless.  (Jt. Stip. 9-10.)  Testimony from
15  someone in a position to observe a claimant's symptoms and daily activities is
16  "competent evidence."  Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988)
17  (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)); see also Lewis v.
18  Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's
19  symptoms is competent evidence that an ALJ must take into account, unless he or she
20  expressly determines to disregard such testimony and gives reasons germane to each
21  witness for doing so.").  An ALJ must consider this testimony in determining whether
22  a claimant can work.  Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th
23  Cir. 2006); see also 20 C.F.R. § 404.1513 (d)(4); Smolen, 80 F.3d at1288.  In order
24  to discount the testimony of a lay witness, the ALJ must "give reasons that are
25  germane to each witness."  Stout, 454 F.3d at 1053; see also Valentine v. Comm'r of
26  Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).  A conflict with the medical
27  evidence, for example, can be a "germane reason" to reject the observations of a lay
28  witness.  See Lewis, 236 F.3d at 511.  An ALJ's error in failing to consider lay

14

1   witness testimony is subject to a harmless error analysis.  <u>Robbins v. Soc. Secm.</u>
2   <u>Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006); <u>Stout</u>, 454 F.3d at 1056.  "[W]here the
3   ALJ's error lies in a failure to properly discuss competent lay testimony favorable to
4   the claimant, a reviewing court cannot consider the error harmless unless it can
5   confidently conclude that no reasonable ALJ, when fully crediting the testimony,
6   could have reached a different disability determination."  <u>Stout</u>, 454 F.3d at 1056.

7        In his Notice of Decision, the ALJ made only one reference to Mr. Esparza's
8   third party function report, stating: "[T]he opinion of [plaintiff's] son has been
9   reviewed [], but greater weight is accorded to the objective medical evidence and
10  statements from medical sources."  (AR 13.)  The ALJ's brief reference to Mr.
11  Esparza's report did not include any findings as to his credibility, nor did the ALJ
12  provide any explanation for accepting or rejecting his opinion.  Although the ALJ
13  erred by implicitly rejecting Mr. Esparza's opinion without providing germane
14  reasons for doing so, such error was harmless.  <u>Stout</u>, 454 F.3d at 1053.

15       Mr. Esparza's statements in a document entitled "Function Report-Adult-Third
16  Party" were substantially similar to, and in some instances, mirrored, plaintiff's
17  administrative hearing testimony and function report statements.  (AR 42, 168-83,
18  217-24.)  Mr. Esparza's report indicated that he helped plaintiff prepare food, do the
19  laundry, complete various household chores and shop for groceries, which plaintiff
20  also testified to and stated in her function reports.  (AR 42, 170, 178-79, 219, 224.)
21  Indeed, many of Mr. Esparza's answers were nearly identical to those of plaintiff's.
22  (<u>Compare</u> AR 169 <u>with</u> AR 177; AR 170 <u>with</u> AR 178; AR 171 <u>with</u> AR 179; AR
23  172 <u>with</u> AR 180.)

24       As discussed above, the ALJ fully addressed plaintiff's testimony and
25  discounted it for clear and convincing reasons.  Accordingly, the ALJ's failure to
26  address Mr. Esparza's opinion was inconsequential to the ultimate determination of
27  disability, and therefore was harmless.  <u>Stout</u>, 454 F.3d at 1056; <u>see also</u> <u>Clevenger</u>
28  <u>v. Astrue</u>, No. EDCV 09-1279-CW, 2010 WL 4024768, at *3-4 (C.D. Cal. Oct. 13,

2010) (the failure to address lay witness testimony was harmless because the testimony was substantially similar to the statements made by the plaintiff); Lonian v. Astrue, No. EDCV 10-530-JC, 2010 WL 4916605, at *3 (C.D. Cal. Nov. 24, 2010) (the ALJ did not err by failing to discuss a letter submitted by two lay witnesses where the statements were similar to plaintiff's own testimony).  No reasonable ALJ would have reached a different decision based on the record.  See Stout, 454 F.3d at 1055 (a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination).  Thus, remand is not warranted.

**III.    The ALJ properly considered the vocational evidence and found that plaintiff could perform her past relevant work.**

Plaintiff asserts that the ALJ improperly found that plaintiff could return to her past relevant work as a teacher's aide because he failed to consider the requirements of plaintiff's work as she performed it and as it is generally performed. (Jt. Stip. 17.)

At step four of the evaluation process, plaintiff has the burden of proving that she is unable to return to her past relevant work. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001) (citing Tackett v. Apfel 180 F.3d 1094, 1098 (9th Cir. 1999); Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  The ALJ must determine whether the claimant can perform the actual functional demands and duties of a particular past relevant job, or the functional demands and duties of the occupation as generally required by employers throughout the national economy. Pinto, 249 F.3d at 845 (citing SSR 82-61, 1982 WL 31387, at *2).  In making this finding, the ALJ may rely on the Dictionary of Occupational Titles ("DOT") or choose to invoke the expertise of a vocational expert ("VE").  See 20 C.F.R. §§ 404.1560 (b)(2) (A VE or vocational specialist ("VS") can be used at step four to determine whether a plaintiff can perform his or her past relevant work), 416.960(b)(2) (same); accord SSR 82-61, 1982 WL 31387, at *2; see also SSR 00-4p, 2000 WL 1898704, at *2. "Occupational

evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. "When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." Id. at 4. In such situations, the adjudicator "will [a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." Id. "If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id.

Here, the ALJ properly considered the demands of plaintiff's past relevant work and made the requisite findings. The ALJ found that plaintiff was "capable of performing her past relevant work as a teacher aide or cashier, as generally performed in the national economy . . . [e]ither position does not require the performance of work-related activities precluded by [plaintiff's] [RFC] . . . [s]o testified the [VE], and I concur and so find." (AR 16.) It should be noted that if an ALJ finds that a plaintiff can return to her past relevant work, the testimony of a VE is not necessary. Here, even though the ALJ questioned the VE, it is irrelevant given that the ALJ was not under this obligation. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (explaining that since plaintiff failed to show he was unable to return to his previous job, the burden of proof remained on plaintiff and the VE's testimony was thus useful but not required.)   Thus, preliminarily, the Court finds that because the ALJ ultimately concluded that plaintiff could return to her past relevant work, the VE testimony was not required and irrelevant to the ultimate conclusion. However, even analyzing the case as though the testimony of the VE was necessary, no error occurred.

The ALJ properly relied on the VE who incorporated plaintiff's testimony and the DOT to determine the physical and mental demands of plaintiff's past work as a teacher's aide.   At the administrative hearing, the VE made a special point to

17

distinguish plaintiff's previous work as a teacher's aide as she performed it with special needs children, and as generally performed. (AR 48.) The VE identified the DOT code for the teacher's aide position as 249.367-074, requiring semi-skilled, light work. (Id.) The VE stated "[t]ypically teacher['s] aides that work with special needs children could work at the medium level just because of the demands of those children . . . But per DOT it's . . . light [work]. . . the DOT does not differentiate . . . in their description." (Id.) The VE further testified that plaintiff performed this work at the medium level. (Id.) The ALJ posed the following hypothetical to the VE: "[A]ssuming a hypothetical individual who, at all times in question, is advanced age, is apparently closely approaching retirement age, has a high school education, and the past work you've just identified . . . the individual is able to lift and carry 20 pounds occasionally, 10 pounds frequently, sit six hours in an eight-hour day with appropriate breaks . . . occasional postural activities . . . could such an individual perform any of the past work you've identified?" (AR 50.) The VE testified that plaintiff could perform her past relevant work as a teacher's aide as generally performed per the DOT, but not as plaintiff performed it. (Id.) The ALJ asked the VE if his testimony was consistent with the DOT, and the VE responded "[w]ith the exception to my comments regarding teacher['s] aide, yes." (AR 51.)

Plaintiff contends that her description of her previous work, as requiring her to stand and/or walk for six to eight hours and lift up to one hundred pounds, should have been adopted. (Jt. Stip. 17; AR 331.) However, even if the ALJ adopted plaintiff's description, it is apparent that the VE would have likewise testified that plaintiff could not return to the work as she performed since the VE already precluded work that required less exertion, *i.e.* at the medium level.[7] Moreover, the description

---

[7] Furthermore, as discussed above, the ALJ properly found that the evidence did not fully support plaintiff's allegations concerning her pain and limitations and properly considered all of the evidence of record in arriving at the RFC assessment.

18

1   of plaintiff's work as she performed it is not dispositive here, as the VE testified, (and

2   the ALJ found), that plaintiff would be able to perform the work of a teacher's aide

3   not as she performed it, but as generally performed.   Even if a plaintiff cannot

4   perform the functional demands and duties actually required by her former job, if she

5   can perform the demands and duties as generally required by employers, she is not

6   disabled.  See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

7       Plaintiff further asserts that it was improper for the ALJ to rely on the DOT

8   description of a teacher's aide even as generally performed because it does not

9   comport with plaintiff's description of the job as she performed it. (Jt. Stip. 17.) The

10  plaintiff argues that "the Administration has failed to demonstrate that . . . [p]laintiff's

11  work as a teacher's aide in the field of special education would be the same as the

12  occupation of teacher's aide with normal children. (Jt. Stip. 17-18.) However, at step

13  four, it is plaintiff's burden to prove an inability to return to her former "type of

14  work," and not just to her former job, and plaintiff has not provided any vocational

15  evidence to support her contention.[8] Villa, 797 F.2d at 798; see also Bustamante, 262

16  F.3d at 953.

17      Accordingly, based on these findings, the ALJ properly found that plaintiff,

18  whose RFC he assessed as light work, was capable of performing her past relevant

19  work as a teacher's aide as generally performed in the national economy.  (AR 16.)

20  Nevertheless, assuming arguendo, that the ALJ did not properly find that plaintiff

21

22  _____

23          [8]     The Court notes that the level of exertion assigned to a job in the DOT
    is presumptively applicable to a plaintiff's prior work. See Villa v. Heckler, 797 F.2d
24  794, 798 (9th Cir. 1986); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  In Villa, the
    Court held that a plaintiff is entitled to overcome the presumption that the DOT's
25  characterization of a job's exertional demands applies to her by demonstrating that
    the duties of her past work were not those envisaged by the drafters of the category,
26  or by demonstrating that the DOT inaccurately evaluated the exertional demands of
    a job title that applies. See Villa, 797 F.2d at 798.  Here, plaintiff has not purported
27  to do either.
28

1  could work as a teacher's aide, the ALJ also found that plaintiff could perform her

2  past relevant work as a cashier, as generally performed, a finding which the plaintiff

3  does not contest.  Any error, if it occurred at all, was therefore harmless, as the

4  outcome would have been the same.  Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.

5  1990) (harmless error rule applies to review of administrative decisions regarding

6  disability); Bozy v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th

7  Cir. 1984).  Thus, no remand is required.

8      To the extent plaintiff argues that the ALJ "failed in his decision to properly

9  address the [VE] testimony" that plaintiff would not be able to perform her past

10  relevant work if she was limited to simple repetitive tasks, required the use of a cane,

11  was precluded from prolonged standing or walking, or needed unscheduled work

12  breaks of up to four hours, such claim does not merit reversal.  (Jt. Stip. 18.)

13      In posing a hypothetical question to the VE, the ALJ is required to include

14  limitations that he found credible and supported by substantial evidence.  Bayliss v.

15  Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Osenbrock v. Apfel, 240 F.3d

16  1157, 1165 (9th Cir. 2001); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

17  Here, the ALJ not only included the supported limitations contained in the RFC

18  assessment in the hypothetical question posed to the VE, but he also posed an

19  additional hypothetical to the VE including a restriction to simple repetitive tasks, a

20  restriction that he did not find was supported by substantial evidence.  (AR 50-51.)

21  However, a hypothetical to a VE need not include limitations that the ALJ properly

22  determines are not supported by substantial evidence because "[t]he [VE's] opinion

23  about a claimant's [RFC] has no evidentiary value if the assumptions in the

24  hypothetical are not supported by the record."  Magallanes, 881 F.2d at 756.  Since

25  the ALJ properly found that plaintiff was not limited to simple repetitive tasks, did

26  not require the use of a cane, was not precluded from prolonged standing or walking,

27  or needed unscheduled work breaks of up to four hours, it was not necessary for the

28  ALJ to include in his decision the VE's testimony regarding these limitations.  See

Osenbrock, 240 F.3d at 1163-64; see also Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) (upholding ALJ's hypothetical question to a VE that excluded alleged limitations properly rejected by the ALJ).

Since the ALJ properly determined that plaintiff could return to her prior relevant work, no hypothetical or VE testimony was necessary.  However, the hypotheticals presented to the VE accurately reflected the RFC determined by the ALJ.  Therefore, reversal is not warranted on this issue.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: October 24, 2011

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE